# IN THE SUPREME COURT OF IOWA

No. 72 / 04-1836

Filed September 15, 2006

**IOWA AG CONSTRUCTION CO., INC., an Iowa Corporation, and IOWA SELECT FARM, an Iowa Limited Liability Partnership**,

Appellants,

vs.

**IOWA STATE BOARD OF TAX REVIEW**,

Appellee.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Taxpayers appeal judicial review decision that affirmed their tax assessment. **AFFIRMED.**

Burns Mossman of Nyemaster, Goode, West, Hansell & O'Brien, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Marcia Mason, Assistant Attorney General, for appellee.

**LAVORATO, Chief Justice.**

Iowa Ag Construction Co., Inc. (Iowa Ag) and Iowa Select Farms, L.L.P. (Iowa Select) appeal from a district court decision affirming the decision of the Iowa State Board of Tax Review (Board). The Board held that property used in pork production was not exempt from Iowa sales or consumer use tax under Iowa Code section 422.45(26), (39) (2001). Because we agree with the conclusions the district court reached, we affirm.

## I. Background Facts.

Iowa Ag constructed buildings for DeCoster Farms. Hog confinement buildings built by Iowa Ag were always owned by Austin J. DeCoster. Some of these buildings were leased to Iowa Select.

In the hog confinement business, different buildings are used for confining hogs of different ages to isolate disease and control the environment. Hog operations use farrowing facilities. In those facilities sows give birth to pigs, and those pigs stay with the sow for three to four weeks. Hog operations also use nurseries in which pigs are confined until they reach a weight of forty or fifty pounds. Finishing facilities are also used to confine pigs weighing 50 to 250 pounds.

A typical hog confinement building is 200 to 280 feet in length and forty feet wide. The foundation is made of poured concrete, with walls from one to four feet high. These walls have a two-inch ledge to allow for installation of slatted concrete flooring or nursery floor frames. Piers in the pits are poured concrete walls that run the length of the building. The pit walls and piers support the slats or nursery floor frames. The pigs and the people tending the pigs walk into a hog confinement building on the same level where the concrete slats or nursery floor frames are located. Below the slatted or nursery flooring is a manure pit that is between one and four feet deep.

Farrowing and nursery barns consist of separate rooms because of the need to regulate the temperature in the rooms. In finishing barns, which are open, the hogs are separated into pens.

Nursery flooring is used in farrowing and nursery buildings. Nursery flooring is galvanized steel mesh wire cut to fit a frame. The frames are typically four-by-eight feet or six-by-ten feet and weigh 144 pounds and 270 pounds, respectively. The frame rests on top of concrete beams and is attached by a "J" bolt to the pen dividers. Bolts are used to secure the flooring to the floor frame in the corners. There are four bolts for each frame. Nursery flooring suspends pigs from their waste, which falls through the wire mesh to the pit below. The nursery flooring is designed to separate the animals from their waste thereby keeping them clean and dry.

Concrete slats are used in finishing buildings. These slats are usually four by ten feet or four by eight feet. A four by ten feet slat weighs about 1340 pounds. The slats are designed to separate the hogs from their waste, which falls through the floor into the waste pit. The weight of the slat holds it in place on the two-inch ledge in the wall of the building.

Exhaust fans are located in the sides or ends of buildings or in pits to exchange air. Ventilation is necessary for the pigs' proper growth. The exhaust fans are made of fiberglass and vary in size and weight from eleven inches square to fifty-three inches square and weigh from 19 pounds to 287 pounds. The wall fans are inserted into a hole in the wall. Four to eight screws or bolts attach the fan to the building. If a fan is removed, a square opening would be left in the building. The size of the opening would match the size of the fan. The pit fans typically sit on top of a rectangular concrete box that is part of the pit structure and located outside the building. A ventilation controller turns the fans on and off, and a motor powers the fans.

Curtains are used in the hog confinement buildings and are part of a system that, together with other equipment in the building, provide proper ventilation for the animals. These buildings are built with rectangular openings along the sides of the buildings to provide for natural ventilation. The curtains are made of vinyl over a polyethylene material, woven together in strands. The curtains can be raised or lowered manually.

Curtain controllers control the ventilation within the hog confinement buildings. A curtain controller receives information from thermostats or sensors inside and outside the building. Based on that information, the curtain controller causes fans to go off and on and the curtains to go up and down. The controller can also control heaters and water misters that drip water on the animals.

The controller is usually attached to a control board in the center of the building with two to four one-half-inch screws. The controller has three wires coming in to it, and the number of wires going out would depend on how many items the controller was to control.

A curtain machine raises and lowers the curtains. The curtain machine replaces a hand crank. The curtain machine weighs between 100 and 150 pounds and is usually attached to the outside of the confinement building with six screws or bolts. Three electrical wires provide power to the curtain machine, and additional wires connect it to the curtain and ventilation controller. The curtain machine has a cable attached to a drum, which is operated by electrical power. When the drum turns, the cable lifts or lowers the curtains on the side of the building.

As part of the biosecurity procedures at Iowa Select and DeCoster Farms, personnel who work in the hog confinement buildings are required to shower every morning upon arrival before entering a hog confinement building. Both Iowa Select and DeCoster Farms provide uniforms for their

employees, which are worn by the employees and are washed on-site. These procedures are necessary because hogs are susceptible to disease that is easily carried and transmitted by clothing.

At each building, refrigerators are used to keep medications for hogs at the proper temperature. Such medication might include immunizations or vitamin or mineral supplements that need refrigeration to maintain effectiveness.

Today, most hogs are bred artificially. After semen is collected and delivered to the farm, the semen must be stored at a specific temperature. A special refrigerator is used at the Iowa Select and DeCoster Farms to store the semen.

Iowa Select uses mowers to cut grass and weeds around the hog confinement buildings for rodent control. Mowers are also used around sewage lagoons located on the site as required by the Iowa Department of Natural Resources. The agency requires the mowing so that its employees can properly inspect the lagoons to determine if there are any cracks, leaks, or degradation around the outside of the lagoons. The mowers were used more than fifty percent of the time to cut grass and weeds to control rodents and to mow grass around the lagoons.

## II. Proceedings.

On November 23, 1999, as a result of a field audit, the Iowa Department of Revenue and Finance (department) sent Iowa Ag a notice of assessment for sales/use tax, covering the period from April 1, 1992, through June 30, 1998. The tax, penalty, and interest amounted to $1,414,714.51. On January 5, 2000, Iowa Ag filed a protest, disputing the entire amount of the assessment.

On November 23, 1999, as a result of a field audit, the department sent Iowa Select a notice of assessment for sales/use tax covering the

period from January 1, 1993, through December 31, 1998. The tax, penalty, and interest amounted to $708,410.87. On April 7, 2000, Iowa Select filed a protest, disputing the entire amount of the assessment. Later, Iowa Select paid the assessment under protest and filed a claim for refund of the amount paid.

Iowa Ag and Iowa Select agreed to consolidate the two cases. An administrative law judge (ALJ) heard the case. The issues pertinent to the appeal before this court were whether certain items of property described above were exempt from tax pursuant to Iowa Code section 422.45(39) and whether other items of property described above were exempt from tax pursuant to Iowa Code section 422.45(26). The department appealed the ALJ's proposed decision to the director, who issued an order reversing a part of the ALJ's proposed decision. Iowa Ag and Iowa Select [hereinafter taxpayers] appealed the director's order to the Board.

Following a hearing, the Board issued its decision. The Board concluded that the following items of property pertinent to the appeal to this court and described above were subject to tax: nursery flooring, concrete slats, exhaust fans, curtains, curtain controllers, curtain machines, washers, dryers, refrigerators, and mowers.

The taxpayers filed a petition for judicial review in the district court. The taxpayers alleged that the Board erred in its legal conclusion that the property described was subject to tax. Following a hearing, the district court affirmed the Board's decision. It is from this ruling that the taxpayers appeal.

### III. Issues.

The first issue is whether the following items of property are exempt from Iowa sales/use tax pursuant to Iowa Code section 422.45(39): nursery

flooring, concrete slats, exhaust fans, curtains, curtain controllers, curtain machines, washers, dryers, and refrigerators.

The second issue is whether the mowers are exempt from such tax pursuant to Iowa Code section 422.45(26).

## IV. Scope of Review.

Our review of agency action is governed by the standards set forth in Iowa's Administrative Procedure Act. *See* Iowa Code §§ 17A.15(3), 17A.19(1), 421.1(4), 422.55(1); *Grimm v. Iowa Dep't of Revenue,* 331 N.W.2d 137, 139-40 (Iowa 1983) (per curiam). "In exercising its judicial review power, the district court acts in an appellate capacity." *Mycogen Seeds v. Sands,* 686 N.W.2d 457, 463 (Iowa 2004). When we review the district court's decision, "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court." *Id.* at 464. "If they are the same, we affirm; otherwise we reverse." *Id.*

The issues here involve the agency's interpretation of law, its factual determinations, and its application of law to the facts. Regarding the agency's interpretation of the law, the court may grant relief if the taxpayers' "substantial rights have been prejudiced because the agency's action meets any one of several statutory criteria." *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.,* 646 N.W.2d 417, 421 (Iowa 2002).

Several administrative rules represent the agency's interpretation of Iowa Code section 422.45(26), (39). Although we give weight to the agency's interpretation, the meaning of a statute is always a matter of law for us to determine. *See City of Marion v. Iowa Dep't of Revenue & Fin.,* 643 N.W.2d 205, 206 (Iowa 2002).

Iowa Code section 17A.19(11) prescribes the deference that we should accord the view of the agency. *See id.* at 206-07. Iowa Code section

17A.19(11)(*c*) provides that we should give appropriate deference to the view of the agency "with respect to particular matters that have been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(11)(*c*). A statutory provision provides that "[t]he director [of revenue and finance] shall have the power and authority to prescribe all rules not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes." *Id.* § 422.68(1). We therefore conclude that the interpretation of section 422.45(26), (39) has been vested in the agency. Consequently, we must give the agency's interpretation of this statute through its administrative rules the deference directed by Iowa Code section 17A.19(11)(*c*). *See City of Marion*, 643 N.W.2d at 206-07. That deference requires us to uphold the agency's interpretation unless that interpretation is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*l*).

Regarding the agency's factual determinations, the court may grant relief if the taxpayers' substantial rights have been prejudiced because the agency action is

> [b]ased upon a determination of fact clearly vested by a provision of the law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

*Id.* § 17A.19(10)(*f*).

> For purposes of our review,
>
> "*[s]ubstantial evidence*" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

*Id.* § 17A.19(10)(*f*)(1). "In assessing evidentiary support for the agency's factual determinations, we consider evidence that detracts from the

agency's findings, as well as evidence that supports them, giving deference to the credibility determinations of the presiding officer." *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 247 (Iowa 2006); *see* Iowa Code § 17A.19(10)(*f*)(3).

As to the agency's factual determinations regarding the applicability of the exemptions in section 422.45(26), (39), such determinations are clearly vested by a provision of law in the discretion of the agency. The case was tried as a contested case proceeding in which factual findings were made based on evidence produced. *See* Iowa Code § 422.54(2). We are therefore bound by the agency's findings of fact if supported by substantial evidence. *See Lange*, 710 N.W.2d at 246-47. We can reverse the agency action regarding findings of fact only if they are not supported by substantial evidence. *Mycogen Seeds*, 686 N.W.2d at 465. By applying this requirement, we are giving "appropriate deference to the view of the agency with respect to particular matters that have been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(11)(*c*); *see also Mycogen Seeds*, 686 N.W.2d at 465.

Because factual determinations are by law clearly vested in the agency, it follows that application of the law to the facts is likewise vested by a provision of law in the discretion of the agency. Iowa Code § 17A.19(10)(*f*); *see also Mycogen Seeds*, 686 N.W.2d at 465. We can therefore reverse the agency's application of the law to the facts only if we determine such application was "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*m*); *see also Mycogen Seeds*, 686 N.W.2d at 465. By applying this standard, we are likewise giving "appropriate deference to the view of the agency with respect to particular matters that have been vested by a provision of law in the discretion of the

agency." Iowa Code § 17A.19(11)(*c*); *see also Mycogen Seeds*, 686 N.W.2d at 465.

In assessing the validity of the agency action, we apply "the standards of review provided in [Iowa Code section 17A.19], as applied to the agency action at the time that action was taken." Iowa Code § 17A.19(8)(*b*); *see Marovec v. PMX Indus.*, 693 N.W.2d 779, 782 (Iowa 2005). This accords with the long-standing rule that " 'statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered.' " *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 498 (Iowa 2003) (quoting *Ontjes v. McNider*, 224 Iowa 115, 118, 275 N.W. 328, 330 (1937)).

Iowa Code section 422.45 was repealed effective July 1, 2004. 2003 Iowa Acts 1st Ex. Sess. ch. 2, §§ 151, 205. A new sales tax exemption section was created, which became effective July 1, 2004. *Id.* ch. 2, §§ 96, 205 (codified at Iowa Code § 423.3 (2005)).

The Iowa legislature passed Senate File 2268 and the Governor signed it on June 2, 2006. 2006 Iowa Legis. Serv. S.F. 2268 (West). Senate File 2268 added a new subsection providing for tax refunds for several items of property at issue here. *Id.* We express no opinion on this provision.

Because we are dealing with issues of tax exemption, we must keep in mind that any doubts as to tax exemptions must be resolved in favor of taxation. *Dial Corp. v. Iowa Dep't of Revenue & Fin.*, 634 N.W.2d 643, 646 (Iowa 2001).

With these principles in mind, we consider the issues before us.

**V. Exemption Afforded by Iowa Code Section 422.45(39).**

**A. Applicable law.** Iowa Code section 422.45(39) exempts from sales tax

[t]he gross receipts from the sale or rental of farm machinery and equipment, including auxiliary attachments which improve the performance, safety, operation, or efficiency of the machinery and equipment and replacement parts, if all of the following conditions are met:

    *a.* The implement, machinery, or equipment is *directly and primarily used in livestock* or dairy *production* . . . .

    *b.* The implement is not a self-propelled implement . . .

    *c.* The replacement part is essential to any repair or reconstruction necessary to the farm machinery's or equipment's exempt use in livestock or dairy production . . . .

Iowa Code § 422.45(39) (emphasis added).

Section 423.4(4) exempts from use tax "[t]angible personal property, the gross receipt from the sale of which are exempted from the retail sales tax by the terms of section 422.45, except [as to subsections not relevant here] . . . ."

Rule 701—18.48 of the Iowa Administrative Code implements Iowa Code section 422.45.  Iowa Admin. Code r. 701—18.48(8).  This rule defines "equipment" as

tangible personal property (other than a machine) directly and primarily used in livestock or dairy production.  It may be characterized as property which performs a specialized function which, of itself, has no moving parts or if it does possess moving parts, its source of power is external to it.

*Id.* r. 701—18.48(1)(*b*).

Iowa Administrative Code rule 701—18.48(1)(*c*)(1) provides that real property is not machinery or equipment:

    (1) Real property.  The ground or the earth is not machinery or equipment.  A building is not machinery or equipment.  Therefore, tangible personal property which is sold for incorporation into the ground or a building in such a manner that it will become a part of the ground or the building is taxable.  Generally, property incorporated into the ground or a building has become a part of the ground or the building if removal of the property from the ground or building will substantially damage the property, ground, or building or substantially diminish the value of the property, ground, or building.  Fence posts embedded in concrete and electrical

wiring, light fixtures, fuse boxes, and switches are examples of property sold for incorporation into the ground or a building, respectively. The property referred to in 18.48(1)(*c*)(1) can be identified by applying the following test: Assume that the property is being sold to a contractor rather than a person engaged in livestock or dairy production. If sold to a contractor, would the retailer be required to consider the property "building material" and charge the contractor sales tax upon the purchase of this building material. If this is the case, sale of the property is not exempt from Iowa tax law. Iowa department of revenue and finance rule 701—19.3(422, 423) contains a characterization of "building material" and a list of specific examples of building material.

*Id.* r. 701—18.48(1)(*c*)(1) (citation omitted).

As pertinent here, rule 701—19.3, referred to in rule 701—18.48(1)(*c*)(1), states that the term

"building materials" . . . means materials used in construction work, and is not limited to materials used in constructing a building with sides and covering. The term may also include any type of materials used for improvement of the premises *or anything essential to the completion of a building or structure for the use intended.*

*Id.* r. 701—19.3(1) (emphasis added) (citation omitted).

Rule 701—19.3(3) lists typical items regarded as building materials. The list is not intended to be exclusive. *Id.* r. 701—19.3(3). The list regards as building materials floor coverings "which are shaped to fit a particular room or area and which are attached to the supporting floor with cement, tacks or tack strips or *by some other method making a permanent attachment* . . . ." *Id.* (emphasis added). In contrast, the rule notes that carpeting, whether attached to the floor or not, is not considered as a building material and that rugs, mats, and linoleum types of floor coverings that are not attached but are simply laid on finished floors are not considered as building materials. *Id.*

Iowa Administrative Code rule 701—19.10 distinguishes between equipment and real property after installation:

> **Distinguishing machinery and equipment from real property.** A construction contract may include many activities, but it does not include a contract for the sale and installation of machinery or equipment. Machinery and equipment includes property that is tangible personal property when it is purchased and remains tangible personal property after installation. Generally, tangible personal property can be moved without causing damage or injury to itself or to the structure, it does not bear the weight of the structure, and *it does not in any other manner constitute an integral part of a structure.* Manufactured machinery and equipment which does not become permanently annexed to the realty remains tangible personal property after installation.

*Id.* r. 701—19.10 (emphasis added).

Rule 701—19.10(2) lists "property which, under normal conditions, becomes a part of realty." The list, which is nonexclusive, includes "improvements to buildings, including awnings, canopies, . . . *floors* (including computer room floors), . . . storm doors and *windows*, door controls, *air curtains*, . . . and heating, *cooling and ventilation systems*." *Id.* r. 701—19.10(2)(*c*) (emphasis added). While the administrative rule does not define the word "integral," we think rule 701—19.10(2) was intended to define the term when it used the language "property which, under normal conditions, becomes a part of realty." This language tracks the ordinary meaning of "integral": "of, relating to, or serving to form a whole." *Webster's Third New International Dictionary* 1173 (unabr. ed. 2002); *see also Hough v. Iowa Dep't of Personnel*, 666 N.W.2d 168, 173 (Iowa 2003) (noting the court's practice of looking "to the ordinary, commonly understood meaning of the [undefined statutory] word" and using a dictionary to ascertain the meaning).

"Directly and primarily" in section 422.45(39)(*a*) are defined in rule 701—18.48(1). Rule 701—18.48(1)(*e*) pertinently provides that

> [i]f the machinery or equipment is used in livestock or dairy production, to be "directly" so used, that use must *constitute an integral and essential part of production as distinguished from a use in production which is incidental, merely convenient to or*

> *remote from production.* The fact that machinery or equipment is essential or necessary to livestock or dairy production does not mean that it is also "directly" used in production. *Machinery or equipment may be necessary to livestock or dairy production but so remote from it that it is not directly used in that production.*

Iowa Admin. Code r. 701—18.48(1)(*e*) (emphasis added). The statute does not define "directly," but rule 701—18.48(1)(*e*)'s definition of the term tracks with the dictionary meaning of "direct": "marked by absence of an intervening agency, instrumentality, or influence." *Merriam-Webster's Collegiate Dictionary* 327 (10th ed. 2002).

Rule 701—18.48(1)(*e*)(3) lists nonexclusive examples of machinery and equipment that are not considered to be directly used in livestock or dairy production. One pertinent use includes "[m]achinery or equipment used to . . . repair other machinery or equipment directly used in livestock or dairy production." Iowa Admin. Code r. 701—18.48(1)(*e*)(3)(1).

In addition, the rule defines "primarily used in livestock or dairy production":

> Machinery or equipment is "primarily used in livestock or dairy production" if of the total time that unit of machinery or equipment is used, more than [fifty] percent of the time is in livestock or dairy production. If a unit of machinery or equipment is used more than [fifty] percent of the time for production and the balance of time for other business purposes, the exemption applies.

*Id.* r. 701—18.48(1)(*f*).

The rule also lists the following pertinent nonexclusive example of machinery and equipment directly used in livestock or dairy production: "Machinery and equipment used in the conception . . . of livestock or dairy animals (e.g., *artificial insemination equipment*)." *Id.* r. 701—18.48(1)(*e*)(2)(2) (emphasis added).

**B. The merits.** The Board began its analysis by stating that it evaluated the nursery flooring, concrete slats, exhaust fans, curtains,

curtain controllers, and curtain machines on the basis of the permanency or degree of annexation of the structure to other real property under rules 701—18.48, 701—19.3, and 701—19.10, as those rules are set out above. The Board then determined that each of these items of property had to be addressed in terms of those rules on an individual basis. We turn now to the Board's findings and conclusions and our analysis of the same.

1.  **Nursery flooring and slats.**  The Board noted that rule 701—19.3 gives examples of items typically regarded as building materials such as floors that are shaped to fit a particular room or area and that are attached to the supporting floor in some permanent fashion. The Board compared this type of flooring to rugs, mats, or other flooring that are not so attached. The Board made specific findings that nursery flooring and slats (1) are not rugs, floor mats, or flooring coverings that are simply laid but not attached to finished floors; (2) constitute the floor of the building that separates the hogs from the waste pit below; and (3) are attached to the real property to an extent as to become part of the property. Based on these findings, the Board concluded these items were not exempt from tax.

According to the evidence, the buildings in question were constructed for the purpose of operating a hog confinement business. The evidence supports a reasonable inference that the nursery flooring and concrete slats were essential to the completion of the building for the use intended and for that reason were building materials and therefore subject to tax. *See* Iowa Admin. Code rs. 701—18.48(1)(*c*)(1), 701—19.3(1). The nursery flooring and concrete slats also fit the intended meaning of "floors" in rule 701—19.3(3), meaning they are building materials. Accordingly, they meet the definition of "building materials" and therefore are subject to tax. *See id.* r. 701—18.48(1)(*c*)(1). They also fit the intended meaning of "floors" in rule 701—19.10(2)(*c*), that describes "property which, under normal conditions,

becomes a part of realty." As such, the nursery flooring and concrete slats are "an integral part of a structure," within the meaning of rule 701—19.10. The nursery flooring and concrete slats therefore fall outside the meaning of tangible personal property not subject to tax. *See id.* r. 701—19.10.

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(39), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

**2. Exhaust fans.** As to the exhaust fans, the Board found that, after the fans were installed into the walls of the building, "they became part of the real property." The Board further found that these items perform the same functions as a window and are necessary because of the specialized construction of the building. Finally, removing these items, the Board found, would be consequential to the building environment. For all of these reasons, the Board concluded these items were not exempt from tax.

As mentioned, the fans vary in size and weight from eleven inches square to fifty-three inches square and weigh from 19 pounds to 287 pounds. The fans are inserted into a hole in the wall and are attached to the building with screws or bolts. Their removal would leave a hole the size of the fan. The fans are a necessary part of the ventilation system, which is essential for the animals' health and proper growth. This evidence supports the Board's findings that the fans are necessary because of the specialized construction of the building, and their removal would be consequential to the building environment. A reasonable inference from these findings is that the fans are essential to the completion of the building for the use intended and are for that reason considered building materials and therefore subject to tax. *See id.* rs. 701—18.48(1)(*c*)(1), 701—19.3(1).

We note that windows and window screens are listed as typical items meeting the description of "building materials" in rule 701—19.3(3). Windows and cooling and ventilation systems qualify as "property which, under normal conditions, becomes a part of realty." *Id.* r. 701—19.10(2)(*c*). The exhaust fans here serve a similar purpose as windows, window screens, and cooling and ventilation systems. We therefore conclude the fans meet the "building materials" description in rule 701—19.3(3) and are therefore for that further reason subject to tax. *See id.* r. 701—18.48(1)(*c*)(1). The fans also meet the definition of "property which, under normal conditions, become[] a part of realty" in rule 701—19.10(2). As such, the fans are an "integral part of a structure," within the meaning of rule 701—19.10. The fans therefore fall outside the parameters of tangible personal property not subject to tax. *See id.* r. 701—19.10.

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(39), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

**3. Curtains, curtain machines, and ventilation controllers.** The Board found these items are necessary for controlling temperature in the confinement building. The Board further found that these items became part of the hog confinement structure once they were installed. For that reason, the Board found these items did not retain tangible personal property status. Consequently, the Board concluded these items were not exempt from tax.

The evidence showed that the curtains, curtain machines, and ventilation controllers together with the exhaust fans provide proper ventilation for the animals, as found by the Board. The curtain controller is

attached to a control board in the center of the building with screws. The curtain machine is attached to the outside of the building with screws or bolts.

A reasonable inference from this evidence is that these items are necessary and essential to the completion of the buildings for the use intended and for that reason are building materials and therefore subject to tax. *See id.* rs. 701—18.48(1)(*c*)(1), 701—19.3(1). Air curtains and cooling and ventilation systems are listed in rule 701—19.10(2)(*c*) as "property which, under normal conditions, becomes a part of realty." The items in question clearly meet this description. As such, the items are an "integral part of a structure" within the meaning of rule 701—19.10. The items therefore fall outside the parameters of tangible personal property not subject to tax. *See id.* r. 701—19.10.

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(39), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

**4. Washers and dryers.** Regarding the washers, dryers, and refrigerators, the Board analyzed the exemption issue as to whether those items were used directly and primarily in livestock production as set out in Iowa Code section 422.45(39) as implemented by the administrative rules.

As mentioned, personnel who work in the hog confinement buildings at Iowa Select and DeCoster Farms must shower every morning before entering a hog confinement building. The personnel must also wear uniforms provided by their employers, and these uniforms are washed on-site. These procedures are necessary to protect the animals from disease that is easily carried and transmitted by clothing.

The Board found that the washers and dryers are one step removed from being "directly and primarily used in livestock production." The Board therefore concluded that these items were not exempt from tax.

While it may be necessary for the taxpayers to have these items, this is not the test. The test is that the items must not be remote from the production process. Substantial evidence supports the Board's finding that these items are one step removed from being directly used in livestock production. The use of washers and dryers is analogous to maintaining or repairing equipment directly used in livestock production, which is not a direct production use. *See id.* r. 701—18.48(1)(*e*)(3)(1); *Dain Mfg. Co. v. Iowa State Tax Comm'n,* 237 Iowa 531, 538, 22 N.W.2d 786, 790-91 (1946) (holding that drill grinding machine used to service machinery or equipment directly used in processing property was not considered to be directly used in the processing).

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(39), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

**5. Refrigerators.** The evidence revealed there were two types of refrigerators used. One was for storage of medications and another was for storage of semen. The Board found the refrigerators were not directly used in livestock production because they were one step removed from being directly used in production as required by the statute. They were one step removed, the Board found, because "[i]t is the semen, medication and vaccinations that are used, not the refrigerator." For these reasons, the Board concluded these items were not exempt from tax.

The refrigerators used to store the medication were necessary to preserve the medication's effectiveness. However, as with the washers and dryers, this is not the test. The test is that the refrigerators must not be remote from the production process. And like the washers and dryers, the use of these refrigerators is analogous to repairing or maintaining equipment directly used in the production process. We conclude substantial evidence supports the Board's finding that these refrigerators were not directly used in livestock production.

We reach the same conclusion for the same reasons regarding the refrigerators used to store the semen. As mentioned, rule 701—18.48(1)(*e*)(2)(2) provides that artificial insemination equipment is directly used in the production of livestock because it is equipment used in the conception of livestock. As the Board found, refrigerators are not directly used in the production of livestock; rather, it is the semen itself that is directly so used. Unlike artificial insemination equipment, the refrigerators are clearly one step removed from the production of livestock.

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(39), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

**VI. Exemption Afforded by Iowa Code Section 422.45(26).**

**A. Applicable law.** Iowa Code section 422.45(26) exempts from sales tax

> [t]he gross receipts from the sale or rental of farm machinery and equipment, including auxiliary attachments which improve the performance, safety, operation, or efficiency of the machinery and equipment and replacement parts, if the following conditions are met:

> > *a.* The farm machinery and equipment shall be *directly and primarily used in production of agricultural products.*
>
> > *b.* The farm machinery and equipment shall constitute *self-propelled implements or implements customarily drawn or attached to self-propelled implements* or the farm machinery or equipment is a grain dryer.
>
> > *c.* The replacement part is essential to any repair or reconstruction necessary to the farm machinery's or equipment's exempt use in the production of agricultural products.

Iowa Code § 422.45(26) (emphasis added).

**B. The merits.** What remains to be considered are the mowers. The Board determined these items were not exempt pursuant to Iowa Code section 422.45(26), which exempts from tax farm machinery directly and primarily used in the *production of agricultural products.* Production of agricultural products means "a farming operation undertaken for profit by raising crops *or livestock.*" Iowa Admin. Code r. 701—18.44(2)(*a*) (emphasis added). Therefore, the administrative rules applicable to livestock production have application to the mowers.

The taxpayers rely on section 422.45(26) because the exemption in section 422.45(39) does not apply to "self-propelled implement[s] or implement[s] customarily drawn or attached to self-propelled implements" whereas the exemption in section 422.45(26) does apply to such implements. *Compare* Iowa Code § 422.45(39)(*b*), *with* Iowa Code § 422.45(26)(*b*). The mowers here are either pulled by a tractor or are rider mowers.

Iowa Select uses mowers to cut grass around the hog confinement buildings and on the farm for rodent control. Iowa Select also mows around sewage lagoons to abide by an Iowa Department of Natural Resources regulation requiring mowing there to enable the agency to inspect lagoons. These uses consumed well over fifty percent of the mowers' use.

The Board found that the mowers were one step removed from being used directly in the production of livestock. Our reasoning that substantial evidence supports the Board's findings regarding the washers, dryers, and refrigerators applies here with equal force.

We conclude substantial evidence supports the Board's findings. We further conclude that the Board's interpretation of section 422.45(26), as implemented by the administrative rules considered by the Board, was not irrational, illogical, or wholly unjustifiable. Nor was its application of the law to the facts irrational, illogical, or wholly unjustifiable.

## VII. Disposition.

Because we reach the same conclusions the district court reached, we affirm its decision affirming the decision of the Board. We have carefully considered all of the issues. Those we have not addressed were either not properly preserved or lack merit.

**AFFIRMED.**