# IN THE COURT OF APPEALS OF IOWA

No. 20-1206
Filed September 1, 2021


**KARLA KERN,**
        Plaintiff-Appellant,

**vs.**

**FENCHEL, DOSTER & BUCK, P.L.C. and PHARMACISTS MUTUAL
INSURANCE COMPANY,**
        Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        Karla Kern appeals the district court order affirming her award of workers'

compensation benefits.   **AFFIRMED IN PART, REVERSED IN PART, AND**

**REMANDED.**


        Mark S. Soldat of Mark S. Soldat, PLC, West Des Moines, for appellant.

        Thomas D. Wolle of Simmons Perrine Moyer Bergman PLC, Cedar Rapids,

for appellees.


        Considered by Mullins, P.J., May, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**MULLINS, Presiding Judge.**

Karla Kern appeals the district court order affirming the Workers' Compensation Commissioner's (Commissioner) award of workers' compensation benefits. She argues the Commissioner erred in failing to order reimbursement of an independent medical evaluation (IME), improperly converting impairment ratings to disability percentages, and failing to award penalties.

## I.     Background Facts and Proceedings

Kern first began to experience carpal tunnel syndrome in both wrists when she was an employee at a law firm in 2003.[1] She was treated and released from medical care in 2004. Following a brief period of employment with another firm, Kern began to work at Fenchel, Doster & Buck, P.L.C. (the firm) in 2004. In 2006, Kern sought treatment for pain in her left thumb.

In 2013, Kern began to experience more carpal tunnel and thumb pain. She also experienced pain in her right shoulder. In May 2016, Kern sought treatment from her primary care provider and was diagnosed with bilateral carpal tunnel, left thumb trigger finger, and left carpometacarpal joint arthritis. Kern was referred to Dr. Rene Recinos and, in June 2016, was told she would need surgical intervention. Kern reported her injuries to the firm and said they were work related. In August, the firm sent Kern to Dr. Benjamin Paulson, an orthopaedic surgeon, who opined the injuries were not work related. The firm then denied any liability for the injuries, and Kern filed a claim with the Workers' Compensation Division.

---

[1] At that time, Kern was employed by attorney Mark Soldat. Mr. Soldat appears now as Kern's counsel but has not served as her employer since 2004.

Kern returned to Dr. Recinos in 2017 and underwent the recommended surgery on March 21. She missed work from March 21 to April 20, 2017 but was paid for some of the time missed. Kern then returned to work full-time. She also independently underwent an IME in June 2017 with Dr. Sunil Bansal, an occupational medical specialist. Dr. Bansal opined the injuries were caused by Kern's work for the firm and calculated her permanent impairment as "eight percent of the whole person." Dr. Bansal prepared a report with his findings but was not asked to appear personally during the workers' compensation proceedings.

A deputy commissioner with the Workers' Compensation Division held a hearing in August 2017 and issued an arbitration decision the following December. The deputy weighed the opinions of both Dr. Paulson and Dr. Bansal and found Dr. Bansal's opinion "more thorough and convincing," but the deputy found it reasonable that the firm relied on the opinion of Dr. Paulson. The deputy also found the delays in the investigation and notification of the denial of benefits were "contemporaneously conveyed." The deputy accepted Dr. Bansal's method of calculating and ultimate calculation of Kern's impairment rating.

> Relying upon [Dr. Bansal's] opinion, I found that [Kern] proved by a preponderance of the evidence that she sustained a material or substantial aggravation of underlying conditions as a result of her work activities for the [firm], resulting in the manifestation of a cumulative work injury on May 9, 2016. Therefore, I conclude that [Kern] has proved she sustained bilateral carpal tunnel syndrome, left thumb carpometacarpal arthritis, and left trigger thumb, all arising out of and in the course of her employment with [the firm] on or about May 9, 2016.

In response to Kern's request for reimbursement of her IME fees, the deputy found Kern was unable "to establish the prerequisites of Iowa Code section 85.39 (2016) to qualify for an evaluation at [the firm's] expense." It also found no penalties were

awardable for the alleged delays in acquiring treatment and investigating Kern's medical history and current claims.

Kern applied for rehearing with the deputy, who noted the application was "convoluted and unnecessarily complex." The deputy affirmed the decision in its entirety. Kern then appealed to the Commissioner, who affirmed the deputy's "well-reasoned analysis of all the issues raised." Kern again petitioned for rehearing, which was denied. Kern then applied for judicial review. The district court also affirmed. Kern appeals, arguing the agency erred in (1) failing to order reimbursement of IME fees or, in the alternative, to tax them against the firm as a cost; (2) using the wrong method to convert impairment ratings into a permanent disability percentage; and (3) failing to award penalties for undue delay of treatment and investigation.

## II.     Standard of Review

Judicial review of final agency action, including the Workers' Compensation Division, is governed by the Iowa Administrative Procedure Act. Iowa Code § 17A.1(2) (2019); *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 841–42 (Iowa 2015). Section 17A.19(10) describes the standards applicable during judicial review. *Young*, 867 N.W.2d at 842. The district court exercises appellate review and, on appeal, "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court." *Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 267 (Iowa 2018) (quoting *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Rev.*, 723 N.W.2d 167, 172 (Iowa 2006)). We reverse if we do not reach those same conclusions. *Id.*

When the Commissioner's factual determinations are "clearly vested by a provision of law in the discretion of the agency," appellate courts must examine the record as a whole to determine whether those determinations are supported by substantial evidence. Iowa Code § 17A.19(10)(f). Evidence is substantial if "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." *Id.* § 17A.19(10)(f)(1). "[A]pplication of the law to the facts is likewise vested by a provision of law in the discretion of the agency," and appellate courts "can only reverse the agency's application of the law to the facts if we determine the application was 'irrational, illogical, or wholly unjustifiable.'" *Nance*, 908 N.W.2d at 267 (quoting *Iowa Ag Constr. Co.*, 723 N.W.2d at 174). Issues of statutory interpretation are reviewed for correction of errors at law. *Id.* When the agency has "been vested by a provision of law" to exercise discretion, we review for abuse of that discretion. Iowa Code § 17A.19(10)(n), (11)(c).

## III. Analysis

### A. IME Fees

Kern argues the costs of her IME should have been reimbursed. The parties disagree on the standard of review, which turns on the nature of the costs. An IME fee for the actual medical evaluation is recoverable only if a claimant complies with the procedure described in Iowa Code section 85.39 (2016). Costs of an IME report used at hearing, instead of calling the evaluating physician to give in camera testimony, are "taxed in the discretion of the commissioner." Iowa Code

§ 86.40; *Young*, 847 N.W.2d at 846–47. Kern attempted, and attempts on appeal, to recover the costs of the IME or, in the alternative, the report created by Dr. Bansal that was used in the hearing before the deputy.

Our supreme court engaged in an extensive comparison of sections 85.39(2) and 86.40 in *Young*. *See* 867 N.W.2d at 843–47.

> Hearing costs are awarded in the discretion of the commissioner, while fees incurred by an employee for an independent examination and evaluation of disability permanency are separately reimbursed by the employer upon application to the commissioner. The concept of reimbursement under section 85.39, as opposed to taxation, is consistent with the overall approach under the workers' compensation statute that makes the employer responsible for the medical care of an employee. Yet, costs necessary to conduct a hearing adopt an entirely different approach predicated on the discretion of the commissioner. Thus, a distinction exists under the statutory scheme between the taxation of costs incurred in a hearing and medical expenses incurred by an employee after the injury but prior to the hearing.

*Id.* at 846. *Young* explicitly states that employers are "not obligated to pay for an evaluation obtained by an employee outside the statutory process" described in section 85.39. *Id.* at 844.

Kern received no impairment rating from the evaluation by Dr. Paulson. Instead, Dr. Paulson opined the injuries were not caused by Kern's employment at all. Relying on the language of *Young*, the deputy found that no impairment rating was given at all because Dr. Paulson's evaluation went no further than causation. Thus, the IME with Dr. Bansal was not responsive to a disputed impairment rating and was outside the scope of section 85.39. *See id.* (requiring "the evaluation by the physician retained by the employer [to] include[] a permanent disability rating"). The deputy also denied the requested costs pursuant to section 86.40 because Dr. Bansal failed to provide a breakdown of the expenses showing the cost of

preparing the report, even though Kern requested that information. Dr. Bansal provided a breakdown of the expense of (1) the exam and (2) reviewing Kern's medical records and drafting the report.

Kern argues the denial of the exam fees is based on a misinterpretation and misapplication of the law. The statutory analysis provided by our supreme court in *Young* is clear. *Id.* at 844–46. Although *Young* does not answer the precise question of whether a denial of causation is tantamount to a zero percent impairment rating,[2] we find guidance in the following explanation:

> If the injured worker wants to be reimbursed for the expenses associated with a disability evaluation by a physician selected by the worker, the process established by the legislature must be followed. This process permits the employer, who must pay the benefits, to make the initial arrangements for the evaluation and only allows the employee to obtain an independent evaluation at the employer's expense if dissatisfied with the evaluation arranged by the employer.

*Id.* at 847 (citing Iowa Code § 85.39).

The supreme court also explained the balancing of interests in the selection of medical care and independent medical examinations:

> Under the Iowa statute, the employer is given the right to choose who will provide treatment for an employee's injury. *See* Iowa Code § 85.27. In addition, the employer is allowed to subject the employee to reasonable medical examinations by other physicians, presumably of the employer's choosing. *See id.* § 85.39. The quid pro quo for these employer rights is the right of the employee to have a physician of his choosing present at any IME conducted at the employer's request and to have an IME conducted by a doctor of his own choice if the physician retained by the employer has given a disability rating unacceptable to the employee. *See id.* In an apparent attempt to equalize the generally unequal financial positions of the parties, the legislature has said that the employer must pay for the employee's IME under the latter circumstances. *See id.*

---

[2] And we find no other case law on this point.

We conclude that when the statute is considered in its entirety, it is apparent that the legislature intended to balance the competing interests of the employee and employer with respect to the *choice* of doctor. We think, therefore, that the legislature meant to allow the employee to obtain a disability rating from a physician of his "own choice" when the physician *chosen by* the employer gives a disability evaluation unsatisfactory to the employee.

*IBP, Inc. v. Harker*, 633 N.W.2d 322, 327 (Iowa 2001)*; cf. Dodd v. Fleetguard, Inc.*, 759 N.W.2d 133, 140 (Iowa Ct. App. 2008) (relying on *Harker*, 633 N.W.2d at 327, and concluding "section 85.39 does not include an implied requirement that the claimant ultimately prove the injury arose out of and in the course of employment" in order to satisfy the requirements under section 85.39 for reimbursement for IME).

Dr. Paulson's report dated August 25, 2016, is clearly a disability evaluation. He found impairment but not causation. His determination that Kern's injuries were not caused by her employment with the firm was effectively an opinion she suffered no impairment as a result of her employment with the firm.[3] Kern disagreed with that determination and obtained an IME from Dr. Bansal, finding there was permanent disability caused by her employment with the firm. It is worth noting that, ultimately, the commissioner relied on the opinions of Dr. Bansal in finding Kern suffered compensable injuries.

---

[3] The deputy explained:

Defendants never obtained a permanent impairment rating for claimant's alleged injuries. Instead, defendants elected to defend this case on causation grounds. Claimant, however, did request and secure permanent impairment ratings for her various conditions. Specifically, claimant obtained an independent medical evaluation performed by Sunil Bansal, M.D., on June 23, 2017.

If the section 85.39 requirement that a claimant must receive an impairment rating—as opposed to no rating—from the employer's medical evaluator is read in its narrowest sense, as the district court and the commissioner did and the employer urges in this appeal, the door would be closed to claimants like Kern who were examined by a doctor chosen by the employer when such examination resulted in a no-disability determination based on no causation. The question is whether the statute requires a finding of causation prior to a no-disability determination. Or, is the statutory condition for an IME satisfied by a no-causation finding that necessarily results in a finding of no permanent disability arising out of the employment?

"The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *Harker*, 633 N.W.2d at 325 (quoting *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 188 (Iowa 1980)). Accordingly, the statutes are construed liberally. *Id.* In this case, Kern presented herself for an examination by Dr. Paulson, a provider of the employer's choosing. *See* Iowa Code § 85.39. Although Dr. Paulson did not use the words "zero" or "no" disability, the clear effect of his no-causation determination was a finding of no compensable permanent disability. Kern disagreed and thought such a determination was "too low." If we read section 85.39 liberally to benefit the worker, the next logical step was for Kern to have an IME, seeking evidence of permanent disability, which can only be made if there is also a causation determination, typically done in the same examination. In fact, there can be no disability determination arising out of a disability evaluation without a determination there was causation. Kern's request that the employer pay for that

evaluation is consistent with the statutory procedural requirements of section 85.39 and also promotes an appropriate balance of the interests of each party.

We see no conflict applying our supreme court's interpretation of section 85.39 in *Young* to a finding that Dr. Paulson's opinion on lack of causation was tantamount to a zero percent impairment rating and, in fact, we find such interpretation compelling.

Kern also argues the costs of Dr. Bansal creating the report for use in place of in camera testimony should be taxed pursuant to section 86.40. "Under rules promulgated by the commissioner, the assessment of costs under section 86.40 include[s] 'the reasonable costs of obtaining no more than two doctors' or practitioners' reports.'" *Young*, 867 N.W.2d at 844 (quoting Iowa Admin Code r. 876–4.33). "[T]he expenses of the underlying medical treatment and examination are not part of the costs of the report or deposition." *Id.* at 846. Dr. Bansal provided a breakdown of the fees for his report, specifying the costs of (1) the physical examination and (2) the record review and report. Because Dr. Bansal did not specify, and Kern was then unable to prove, the cost of drafting the report apart from the record review, the deputy declined to tax cost of the report pursuant to the discretionary powers of section 86.40. Considering the posture of the case at that time—having denied IME reimbursement—the deputy's decision to deny the combined-costs request as presented was not unreasonable or arbitrary. However, in light of our determination the deputy improperly denied the IME reimbursement application, we direct the commissioner to likewise reconsider the question of reimbursement for the cost of report preparation.

Accordingly, we reverse and remand to the district court for an order reversing and remanding to the commissioner for consideration of Kern's IME reimbursement application and cost of preparing the hearing report, consistent with this opinion.

B.      Functional Disability Calculation

Kern argues the deputy erred by using the wrong method to calculate her impairment rating and in converting that rating into a whole-body impairment rating. The firm argues the deputy used the proper method according to the American Medical Association's (AMA) guidance.   Injuries may be classified as either scheduled or unscheduled loss of function and are analyzed in different ways. *Simbro v. Delong's Sportswear*, 332 N.W.2d 886, 887 (Iowa 1983).

> The classification of permanent partial disability into either scheduled or unscheduled loss is derived from section 85.34(2).  Subsection (2) provides in lettered paragraphs (a) through (t) a schedule of the number of weeks of benefits for loss of designated organs or members, such as the loss of a leg, arm, or eye.  For unscheduled disabilities, those that paragraph (u) defines as all cases "other than those . . . described or referred to in paragraphs 'a' through 't,'" benefits are based on the injury to the body as a whole.

*Id.* (alteration in original).  But, section 85.34(2) is not the only inquiry, because it only tells us how many weeks of benefits should be paid.  *Id.* § 85.34.

The Iowa Administrative Code adopted the AMA *Guides to the Evaluation of Permanent Impairment*, Fifth Edition (AMA Guides), for the purpose of "determining the extent of loss or percentage of impairment for permanent partial disabilities and payment of weekly compensation for permanent partial scheduled injuries under Iowa Code section 85.34(2)."  Iowa Admin. Code r. 876–2.4.  The AMA directs that "Regional impairments resulting from the hand, wrist, elbow, and

shoulder regions are *combined* to provide the upper extremity impairment . . . . The upper extremity impairment is then converted to a whole person impairment by means of Table 16.3." Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 435 (Linda Cocchiarella & Gunnar B.J. Andersson eds., 5th ed. 2000).

The deputy accepted Dr. Bansal's impairment rating and then turned to the AMA Guides to complete the calculation of benefits owed to Kern. The Commissioner and district court affirmed the deputy's calculation as a proper application of standards adopted by our legislature supported by substantial evidence. On our review of the record, we agree that the deputy's application of the standards provided in section 85.34(2) and the administrative rule were proper applications of the legal standards, and the findings and impairment rating are supported by substantial evidence.

C.     Penalties

Kern argues the firm and its insurance carrier caused delays in the investigation and payment of her benefits "without reasonable or probable cause or excuse" and penalties should have been awarded. Iowa Code § 86.13(4)(a). Penalties are awarded only if both of the following are found: "(1) The employee has demonstrated a denial, delay in payment, or termination of benefits," and "(2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits." *Id.* § 86.13(4)(b). "A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits." *Christensen v. Snap-On Tools Corp.*, 554 N.W.2d 254, 260 (Iowa 1996).

Section 86.13 does not require that the lack of a reasonable excuse be due to any particular type of conduct by the insurer, whether negligent, reckless or intentional. The focus is on whether timely payment of the benefits due was made and if not, whether there was a reasonable excuse for the failure to make timely payment of the amount owed.

*Id.*

Our review of the record reveals the following timeline of relevant events. Kern informed the firm of her injury on May 9, 2016 and was evaluated on May 20. Dr. Recinos evaluated Kern on June 2. The firm then reported Kern's injuries to their insurer, Pharmacists Mutual Insurance Company (Pharmacists), on June 8, who involved their adjuster, Tristar. Tristar sent a letter to Kern requesting release of her medical records on June 9. On June 28 and 29, Pharmacists and Tristar communicated regarding Kern's claim and the necessity of keeping Kern informed of any progress. Kern faxed medical records to Tristar on June 29.

On July 11, Kern resent her medical records and complained to the insurer that the adjuster had not communicated with her since June. On July 13, 15, 19, and 20 the adjuster emailed Kern saying only that investigation was ongoing and set goals for responses that were not met. The adjuster said that investigation took additional time due to the long development of Kern's injuries. A case manager was appointed on July 24 and contacted Kern on July 26. The record shows consistent contact between Kern and the case manager throughout August. Kern communicated with Pharmacists in mid-August to ask why (1) communication with Tristar stopped and (2) she was being sent to Des Moines for an evaluation when a closer provider was available.

On August 17, Tristar stated the medical records were not complete until July 21 and that made the investigation lag. Kern saw Dr. Paulson on August 25, and his report was emailed to Kern on September 6. Tristar's letter denying Kern's claim was not drafted until October 3.

Kern alleges "the 169 days that Pharmacist drug out its effective, if not intentional, claim denial" resulted in a delay in Kern's treatment and should result in penalties. She alleges a number of actions taken were malicious, including the choice of Dr. Paulson for evaluation, because there was an awareness of his opinion that carpal tunnel was not a work-related condition.

Authority in Iowa is clear that insurer investigation is a reasonable cause for delay. *Id.* Accordingly, we agree with the deputy that the initial delay due to the timing of receipt of medical records and the investigation of years of records are substantial evidence of a reasonable delay. *See id.* Furthermore, we do not find it unreasonable for the firm, and Pharmacists, to rely on Dr. Paulson's opinion on causation to deny the claim. *Id.* The crux of a claim for penalties is an examination of "whether there was a reasonable excuse for the failure to make timely payment of the amount owed." *Id.*; *see* Iowa Code § 86.13. However, Kern's claims had not progressed to the point of the payment of benefits because of the reasonable excuse due to investigation and denial due to reasonable reliance on Dr. Paulson. Additionally, Kern continued to work during the investigation period and following the denial of benefits, until she took leave for her surgery. She was not eligible for healing period or temporary benefits. Iowa Code §§ 85.33, 34. Accordingly, we agree that no penalties were awardable in this case.

**IV.     Conclusion**

On our review of the record and applicable legal standards, we affirm the district court's affirmance of the deputy's decisions on the impairment rating calculation and penalties.  But, because we find Dr. Paulson's determination that Kern's injuries were not caused by her employment was tantamount to a zero percent impairment rating, we reverse in part and remand to the district court for an order reversing in part and remanding to the commissioner for a reconsideration of Kern's application for IME fees.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**