# IN THE SUPREME COURT OF IOWA

No. 19–0261

Filed June 19, 2020

**JOHN ALLEN CHRISTENSEN** and **LILA CHRISTENSEN,**

Appellants,

vs.

**IOWA DEPARTMENT OF REVENUE,**

Appellee.

---

Appeal from the Iowa District Court for Winneshiek County, John J. Bauercamper, Judge.

Taxpayers appeal a district court's judicial review of an assessment of additional income taxes affirming the Iowa Department of Revenue's rejection of their capital-gain deduction from the sale of farmland. **AFFIRMED.**

Dennis G. Larson of Larson Law Office, Decorah, for appellants.

Thomas J. Miller, Attorney General, and Hristo Chaprazov, Assistant Attorney General, for appellee.

**OXLEY, Justice.**

In this administrative agency appeal, John and Lila Christensen (the Christensens) challenge the director of the Iowa Department of Revenue's (Department) determination that capital gains Lila earned from the sale of farmland she inherited from her father and leased on a cash-rent basis do not qualify for the exclusion from Iowa income tax allowed under Iowa Code section 422.7(21)(*a*) (2005).[1] The Christensens sought judicial review of that determination, and the district court affirmed. Because neither the Department's interpretation of section 422.7(21)(*a*) as delineated in Iowa Administrative Code rule 701—40.38(1)(*c*) (2006) nor the director's application of that rule to the facts of this case is irrational, illogical, or wholly unjustified, we likewise affirm.

### I. Background Facts.

Lila Christensen's father, Thomas Benson, died in 1989, leaving ninety-six acres of property in Winneshiek County, Iowa, to Lila and her brother, Tom Benson (Tom), as tenants in common. The property consisted of ninety-three acres of farmland and a three-acre homestead. Lila and Tom kept the homestead for their personal use when visiting the area. They continued to cash rent the farmland to their father's tenants, Thomas Frana, who rented and farmed thirty-five acres, and Jeffrey Miller, who, along with his father, rented and farmed the remaining fifty-eight acres. Neither the Christensens nor Tom were farmers or ever farmed this property. John Christensen was an insurance claims examiner until he retired in 1999, and Lila Christensen was an administrator who retired in 2003. The Christensens lived six hours away in Illinois, and Tom (who

---

[1]This appeal involves the Christensens' 2006 Iowa individual income tax return. All references are to the Iowa Code and Iowa Administrative Code in effect for the 2006 tax year.

was a magazine publisher) lived in Des Moines and later in Minnesota during the times relevant to this case.

In 2006, Lila and Tom sold the farmland to the respective tenants who had farmed the land since before Lila and Tom's father's death. Iowa Code section 422.7(21) excludes from taxable income certain capital gains earned from the sale of real property used in an individual taxpayer's business. A taxpayer claims the exclusion as a deduction from "gross income," which includes all capital gains the taxpayer earned. The Christensens claimed a deduction for the $93,036 capital gain Lila received for her share of the farmland sale on their 2006 Iowa individual income tax return.

The Department audited the Christensens' 2006 income tax return and denied the capital-gain deduction. The Department found the Christensens failed to show they "materially participated" in the business for which the real property was used as required for the deduction. The Department assessed additional income tax of $6616.00, a penalty of $1614.30, and interest of $296.75. The Christensens paid the assessment and filed a formal protest with the Department. The Department filed its answer to the protest on October 16, 2015, triggering a contested case hearing before an administrative law judge (ALJ). The parties engaged in discovery, and a hearing was held on May 20, 2016.

In her January 5, 2017 proposed order, the ALJ identified "[t]he fighting issue" as "whether the Taxpayers demonstrated material participation with respect to the farmland, which was leased on a cash-rent basis during the entire time Christensen held her interest in the property." The parties disputed which part of rule 701—40.38(1)(c) governed the Christensens' lease of the farmland. The Department asserted the Christensens' capital gain was subject to paragraph (4),

addressing cash farm leases. The Christensens argued they were not "farmers" to whom that rule was directed but asserted they were engaged in a farm rental business governed by paragraph (7), addressing general rental activities or businesses.

To support their position that they materially participated in a farm rental activity, the Christensens provided evidence that they took over the farm checkbook and responsibilities for paying farm expenses from Lila's brother, Tom, when he retired and moved to Minnesota in 1997. John testified that he and Lila "had an unwritten agreement with [Tom] that the Christensens would do whatever was necessary to maintain the cash farm rental and [Tom] would maintain the house and homestead." The Christensens attested that their "activity included but was not limited to arranging for [their] tenants, working out tenant problems, determining and collecting rents, paying expenses[,] and providing maintenance and care for the property." They also asserted that their "participation in the business constituted substantially all the participation" from 1989 until the property was sold in 2006.

The ALJ was concerned with the vagueness of the Christensens' evidence. The Christensens stated in interrogatory answers that they negotiated leases, maintained fences and cattle buildings, cleaned brush from fence lines, arranged tiling "when needed," monitored farming practices, and handled related paperwork, but they failed to provide details such as how many times per year or what was involved in "maintenance." They estimated they spent a "minimum of 130 h[ou]rs/year" without substantiating the time. The ALJ found John's testimony at the hearing to be equally vague.

> [John] confirmed that he did not keep track of their trips to the farm or keep logs, calendars, or any type of records to document the time they devoted to the farm rental activity.

> He said that he visited the farm several times a year, either with his wife or by himself. [John] had some free time with his job and enjoyed the area. Sometimes he stayed at the farm for several days or a week or more. While there he "did whatever needed to be done."

But John was unable to provide any specific details or time estimates when asked about the "fence repairs, building maintenance, and brush clearing" he claimed he and Lila performed on an "as needed" basis. Instead, he consistently testified only that "they did 'whatever needed to be done.' "

Frana, one of the tenant farmers, testified at the hearing. Despite living a quarter of a mile from the farmland, he never witnessed the Christensens repairing fence; in fact, he could not recall there ever being a need to repair any fencing. Nor did he ever see the Christensens clearing brush on the property, though he did recall giving the Christensens the name of someone who might be interested in the work when they asked him if he would clear brush for them. Frana also testified about a tiling project he hired to be done in December 2004. The other tenant asked Frana to extend the tiling work through his part of the farm to the road, and Frana agreed, paying $1300 for the additional tiling. After the job was complete, Frana asked the Christensens to pay half, and they agreed.

The ALJ expressly found John's testimony vague and the details he did provide contradicted by other evidence in the record. Based on Frana's contrary testimony, the ALJ discredited John's testimony that he arranged and paid for tiling. She also discredited John's testimony that he and Lila cleared brush from the fence lines, noting that the lease agreement required the tenants to keep the property clear of weeds and brush.

The ALJ found that John's

> primary rental activity appear[ed] to have been the dealing with the tenants and annually negotiating the farm leases. Both tenants were experienced farmers who had farmed this

ground for many years. . . . [John] had no problems with these tenants and renewed or renegotiated their leases each year. . . . [H]e used a standard form lease agreement and the amount of rent was [the] only term of the lease that changed from year-to-year.

. . . Negotiation of the rental rate in years when it did change could involve up to two hours of discussion.

The ALJ relied on rule 701—40.38(1)(*c*)(4) for cash farm leases, noting it was first added to the capital-gain rule in 1993 and had remained essentially unchanged since. The ALJ concluded that the Christensens' position was "inconsistent with the plain terms of rule 701—40.38, past application of the rule, and the Department's long-standing interpretation of the Iowa capital gain deduction as it applies to the sale of farmland held for rental."

The ALJ also rejected the Christensens' argument that they met the general "material participation" tests contained in rule 701—40.38(1)(*c*) based on an "absence of proof of the specific nature, amount, or frequency of their activity related to rental of the farmland." The ALJ concluded,

The record shows some participation in rental activities by the [Christensens]. But the nature and amount of proven activity related to rental of the farmland falls far short of the regular, continuous, and substantial activity required to support a finding of material participation in a business activity.

Based on a lack of evidence, the ALJ concluded the Christensens did not meet the material-participation standard, regardless of the rule specifically addressing cash farm leases.

The Christensens timely appealed the ALJ's determination to the director. The director held a hearing on April 25, 2017, and issued a final order on May 25, 2017, adopting and approving the ALJ's findings of facts and conclusions of law set forth in the proposed order. In response to the Christensens' equal protection challenge to rule 701—40.38, the director concluded she lacked authority to declare a rule unconstitutional.

The Christensens filed a timely petition for judicial review in the Iowa District Court for Winneshiek County from the director's final order. The district court held a hearing on August 3, 2018. In its January 14, 2019 order, the district court concluded the director's decision was supported by substantial evidence in the record pursuant to Iowa Code section 17A.19(8)(*f*). The district court identified the tests contained in rule 701—40.38, specifically the cash-farm-lease rule, concluding, "The agency determined the type, duration, and significance of the participation provided by this taxpayer in the rental activities of this property fell far short of those required to establish material qualification and obtain the capital gain deduction."

The district court denied the Christensens' appeal and affirmed the director's decision. The district court did not address the Christensens' constitutional challenge to rule 701—40.38, and the Christensens did not seek reconsideration under Iowa Rule of Civil Procedure 1.904(2).[2]

The Christensens timely appealed the district court's decision, and we retained the appeal.

## II. Scope of Review.

The scope of our review is governed by Iowa's Administrative Procedure Act (APA), Iowa Code chapter 17A. *See Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 267 (Iowa 2018). The Christensens challenge application of Iowa Administrative Code rule 701—40.38(1)(*c*) to the determination of whether the capital gain earned from the sale of Lila's farmland is excluded from their taxable income under Iowa Code section

---

[2]Where the lack of a ruling on the constitutional challenge was not brought to the district court's attention, it was not preserved for appeal, and we do not further address it. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 884 (Iowa 2014) ("[T]he district court did not address any constitutional claims raised by [appellants, who] did not file a rule 1.904 motion with the district court for a ruling on these issues. Error has not been preserved for appellate review.").

422.7(21)(*a*).[3]  The deference owed to an agency's interpretation of a statute depends on whether "interpretation of a provision of law" has, or has not, "clearly been vested by a provision of law in the discretion of the agency." *Compare* Iowa Code § 17A.19(10)(*c*) (If not, we determine whether the agency's interpretation is "erroneous."), *with id.* § 17A.19(10)(*l*) (If so, we determine whether the agency's interpretation is "irrational, illogical, or wholly unjustifiable.").

The Department has been given the express authority to administer—but not to interpret—chapter 422.  *Compare id.* § 422.68(1) (giving the director of the department of revenue authority to make rules "necessary and advisable for its detailed administration and to effectuate its purposes"), *with id.* § 147.76 (giving boards for health-related professions authority to adopt rules "to implement *and interpret* this chapter" and other specific chapters of the Iowa Code (emphasis added)). The lack of express interpretative authority is not determinative, however, because deference to an agency's interpretation requires such authority be "clearly . . . vested," not expressly vested, by the legislature.  *See id.* § 17A.19(10)(*l*).

---

[3]We previously determined that the Department's interpretation of section 422.7(21)(*a*) contained in a different paragraph of rule 701—40.38 was entitled to deference because the Department "has clearly been vested with discretion to interpret chapter 422." *Ranniger v. Iowa Dep't of Revenue & Fin.*, 746 N.W.2d 267, 268–69 (Iowa 2008) (addressing Iowa Administrative Code rule 701—40.38(8)).  *Ranniger* involved whether an accountant's sale of his fifty percent interest in an accounting partnership satisfied section 422.7(21)'s requirement that "[t]he sale of a business means the sale of all or substantially all of the tangible personal property or service of the business." *Id.* at 268 (emphasis omitted) (quoting Iowa Code § 422.7(21)(*a*)(1) (1999)).  *Ranniger*, which was decided before *Renda v. Iowa Civil Rights Commission*, 784 N.W.2d 8 (Iowa 2010), involved interpreting "sale of a business" as used in section 422.7(21)(*a*), while this case concerns interpreting the phrase "materially participated" in the same section.  Following our own admonition "that each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes," *Renda*, 784 N.W.2d at 13, we take a fresh look at whether the Department was vested with authority to interpret section 422.7(21)(*a*) with respect to "material participation," involved in this case.

In *Renda v. Iowa Civil Rights Commission*, we developed a list of guidelines to "inform our analysis of whether the legislature has clearly vested interpretative authority with an agency" when express interpretative authority is lacking. 784 N.W.2d 8, 14 (Iowa 2010). Those guidelines include whether the statutory provision being interpreted is a substantive term within the special expertise of the agency, whether the provision at issue is in a statute other than the statute the agency has been tasked with enforcing, and whether the term has an independent legal definition not uniquely within the subject matter expertise of the agency. *Id.* "Indications that an agency has interpretive authority include rule-making authority, decision-making or enforcement authority that requires the agency to interpret the statutory language, and the agency's expertise on the subject or on the term to be interpreted." *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 423 (Iowa 2010). Thus, "we review 'the precise language of the statute, its context, the purpose of the statute, and the practical considerations involved' to determine whether the interpretation of a statute has been clearly vested in the discretion of the agency." *Id.* (quoting Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 63 (1998) [hereinafter Bonfield]).

The Christensens were entitled to deduct the capital gain earned on the sale of Lila's farmland if it was "from the sale of real property used in a business, in which [they] materially participated for ten years." Iowa Code § 422.7(21)(*a*)(1). The decisive issue is whether they "materially participated" in a business in which the farmland was used. Relying on rule 701—40.38, the director determined the Christensens did not materially participate and rejected their claim to the capital-gain

deduction. The deference we owe to the Department's rules interpreting section 422.7(21)(*a*) turns on whether the Department was clearly given authority to interpret "materially participated" as used in the statute.

In *Sherwin-Williams*, we recognized the department's rule-making authority from section 422.68, its enforcement authority under section 422.70, and its expertise in income tax subject matter as "indications of interpretive discretion" related to chapter 422. *See* 789 N.W.2d at 423–24; *see also Iowa Network Servs., Inc. v. Iowa Dep't of Revenue*, 784 N.W.2d 772, 775 (Iowa 2010) ("Although the legislature vested authority in the department to interpret much of chapter 422, we are not convinced that authority was intended to extend to all sections of the Code that tangentially relate to chapter 422 [specifically Iowa Code section 476.1D(10) dealing with public utility regulation]."). Nonetheless, we concluded the department lacked clear interpretive authority related to the specific issue involved in that case—whether a retailer could be considered a "manufacturer" for purposes of an exemption from use tax contained in Iowa Code section 422.45(27)(*a*)(1) (1999). *Sherwin-Williams Co.*, 789 N.W.2d at 424. Significant to our conclusion was the fact that the dispute did "not center on an interpretation of the manufacturing exemption in general or even on an interpretation of the statutory definition of 'manufacturer.'" *Id.* at 423. Rather, the issue was "simply whether a retail establishment can be considered a 'manufacturer' under" the definition provided by the Iowa legislature. *Id.* The statutory definition was an "insurmountable obstacle" to concluding the department had interpretative authority over a term the legislature had defined itself. *Id.* at 423–24.

In contrast here, the Iowa legislature did not give its own definition to "materially participated" in chapter 422. Instead, "materially

participated" is determined "as defined in section 469(h) of the Internal Revenue Code." Iowa Code § 422.7(21)(*a*)(1) (2005). The Iowa legislature was not "act[ing] as its own lexicographer" by defining a statutory term. *Sherwin-Williams Co.*, 789 N.W.2d at 425 ("It is significant that the legislature has chosen to define the word 'manufacturer' as used in the manufacturing exemption. 'We recognize the legislature "may act as its own lexicographer." When it does so, we are normally bound by the legislature's own definitions.' " (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010))). Rather, it referenced a definition contained in the Internal Revenue Code.

While the Internal Revenue Code is federal law over which the Department has no direct enforcement powers, it is referenced throughout and incorporated into many sections of Iowa Code chapter 422, *see, e.g.*, Iowa Code § 422.7, over which the Department has both rule-making and enforcement powers, *see, e.g., id.* §§ 422.68(1), .70; *see also Sherwin-Williams Co.*, 789 N.W.2d at 423–24 ("Moreover, the department director's enforcement power certainly requires the director to interpret the [Iowa] Code provisions relevant to a taxpayer's liability." (citing Iowa Code § 422.70) (1999)). Post-*Renda*, we have found disputes involving the interplay between Iowa tax statutes and the Internal Revenue Code to be clearly vested in the department. *See Tremel v. Iowa Dep't of Revenue*, 785 N.W.2d 690, 692–93, 694 (Iowa 2010) (holding the department was clearly vested with authority to interpret Iowa Code section 451.12 where the dispute "involve[d] the interplay of the inheritance tax provisions in Iowa Code chapter 450, the estate tax provisions of Iowa Code chapter 451, and several provisions of the Federal Tax Code").

Looking to the Internal Revenue Code definition, section 469(h) defines "material participation" for purposes of determining whether a

taxpayer is subject to limitations placed on passive losses. *See* I.R.C. § 469(h) (2006). "In general— A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is– (A) regular, (B) continuous, and (C) substantial." *Id.* § 469(h)(1)(A)–(C). The definition goes on to address a number of special considerations. *Id.* § 469(h)(2)–(5). Treasury regulations further illuminate the meaning of "material participation" as used in § 469. *See* Temp. Treas. Reg. § 1.469-5T (as amended in 1996); Treas. Reg. § 1.469-5 (1992).

Our review of Internal Revenue Code § 469(h) and its accompanying regulations convinces us that "material participation" is a specialized term of art in tax law, which falls directly within the Department's area of expertise. *See, e.g.*, *Evercom Sys., Inc. v. Iowa Utils. Bd.*, 805 N.W.2d 758, 762–63 (Iowa 2011) (holding the Iowa Utility Board was vested with authority to interpret "unauthorized change in telecommunication service" because it was "a substantive term within the special expertise of the agency" (first quoting Iowa Code § 476.103(3) (2005); and then quoting *Renda*, 784 N.W.2d at 14)). Further, "material participation" is not a specialized term used in areas outside of tax law.[4] *Cf. Renda*, 784 N.W.2d

---

[4]The only reference to "material participation" or "materially participated" we have located in the text of a current Iowa statute is in section 422.7, at issue in this case. The phrase appeared in prior versions of three other tax statutes, including Iowa Code section 422.5(1)(*o*)(4)(b) (1987) (defining passive activities for purposes of alternative minimum tax), Iowa Code section 422.35(11) (defining "net income" for corporations and addressing passive activities), and Iowa Code section 425A.2(1)(b) (1991) (addressing property taxes for farm property). The Iowa Code uses a similar term, "materially and substantially participate," in chapter 16, dealing with the beginning farmer tax credit and loan program. Iowa Code § 16.75(3)(*e*) (2020) ("The beginning farmer shall materially and substantially participate in farming."); *id.* § 16.79(2)(*d*) ("A beginning farmer is a qualified beginning farmer eligible to participate in the program [if they] . . . [w]ill materially and substantially participate in farming."). The term's use in the United States Code is likewise limited primarily to the tax context. *See, e.g.*, I.R.C. § 42(h)(5)(B), (D) (2018) (participation in low-income housing projects); *id.* § 56(b)(2)(C) (alternative minimum tax); *id.* § 163(d)(5)(A)–(C) (investment property); *id.* § 263A(d)(2)(B) (deductibility of inventory

at 14 (the terms "employee" and "dwelling" at issue were used in a number of different substantive areas of law). Whereas we concluded the phrase "suitable work" had a specialized legal meaning that extended beyond the context of workers' compensation to support our conclusion that the workers' compensation commission lacked authority to interpret that phrase, *see Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518–19 (Iowa 2012) (noting "suitable work" also arose in employment discrimination, wrongful termination, unemployment compensation, and the odd-lot doctrine), the specialized meaning of "material participation" does not extend into other substantive areas of law.

Another indication an agency has been granted interpretative authority arises when an agency "must necessarily interpret [an undefined] term in order to carry out its duties." *Renda*, 784 N.W.2d at 12 (discussing *City of Marion v. Iowa Department of Revenue & Finance*, 643 N.W.2d 205, 207 (Iowa 2002)). *City of Marion* required us to determine whether the department correctly interpreted the term "athletic sport" to include swimming for purposes of an exception to the exemption for

costs); *id.* § 527(e)(5)(D) (participation in political organizations); *id.* § 761(f)(2)(B) (joint ventures); *id.* § 864(c)(4)(B)(iii) (treatment of businesses operated by nonresidents and foreign corporations); *id.* § 865(e)(2)(B) (sale of inventory property outside the United States when a foreign entity participated in the sale); *id.* § 1402(a)(1) (earnings from self-employment in the rental context); *id.* § 2032A(b)(1)(C)(ii) (sale of real property). Outside of the Internal Revenue Code, we located only scattered references to the phrase in the U.S. Code, mostly in related provisions, such as the Social Security Act addressing self-employment income or nonprofit participation in providing housing for the elderly and those with low income. *See, e.g.*, 42 U.S.C. § 411(a)(1) (defining net earnings from self-employment and addressing income from farm leases); *id.* § 1485(w)(1)(A) (setting funds aside for tax-exempt nonprofits who develop projects to house low-income and elderly persons). The only uses of the term we located outside the taxation context appear in the definition of a "related person" for Bureau of Consumer Financial Protection purposes and civil penalties for violations of the provisions of the Federal Food, Drug, and Cosmetic Act. 12 U.S.C. § 5481(25)(C)(ii); 21 U.S.C. § 335b(e). Finally, like the Iowa Code, the U.S. Code uses the term "materially and substantially participate" to define who qualifies as a "beginning farmer or rancher" for tax and loan purposes. 7 U.S.C. § 1991(a)(11); I.R.C. § 147(c)(2)(B)–(C) (discussing "first-time farmers" and using the same "materially and substantially" language).

collection of sales tax contained in Iowa Code section 422.45(20). *See* 643 N.W.2d at 206 ("This exemption . . . does not apply to fees paid to cities and counties for the privilege of participating in any athletic sports." (Emphasis omitted.) (quoting Iowa Code § 422.45(20) (1997))). The department adopted Iowa Administrative Code rule 701—18.39 to define "sport" and "athletic" sport, providing examples of athletic sports that included swimming. *Id.* We concluded "that the matter under consideration ha[d] been vested in the discretion of the agency," *id.* at 207, a conclusion we cited with approval in *Renda*, 784 N.W.2d at 12.

Similarly, the Department "must necessarily interpret [material participation] in order to carry out its duties" related to the capital-gain deduction in section 422.7(21). *See Renda*, 784 N.W.2d at 12. The Internal Revenue Code defines "material participation" in § 469(h) for purposes of limiting the amount of passive losses a taxpayer can recognize in a given year. The Iowa Code incorporates that definition into the distinct context of deducting capital gains earned from the sale of real property allowed by section 422.7(21)(*a*). Applying the phrase in this distinct context is not a straight-forward matter. The Department's adoption of rule 701—40.38[5] was necessary to assist it in meeting its obligation to assess, collect, and challenge tax returns filed by taxpayers claiming the capital-gain deduction. *See* Iowa Code § 422.70.

Our review of the *Renda* guidelines "firmly convince[s us] that 'the legislature actually intended (or would have intended had it thought about the question) to delegate to the agency interpretive power with the binding

---

[5]In November 1993, the department utilized the APA's formal rule-making procedure, *see* Iowa Code §§ 17A.4, .6 (1993), to adopt the detailed subrules in rule 701—40.38, including paragraph (*c*) addressing the "material participation" requirement. 16 Iowa Admin. Bull. 1377, 1474–75 (Jan. 5, 1994); 16 Iowa Admin. Bull. 1045, 1093, 1127–29 (Nov. 10, 1993).

force of law over the elaboration' of the terms" at issue in this case. *Renda*, 784 N.W.2d at 14 (quoting Bonfield at 63); *cf. SZ Enters., LLC v. Iowa Utils. Bd.*, 850 N.W.2d 441, 451 (Iowa 2014) ("Even where definitions have been supplied by the legislature and the terms are not terms of art, we leave open the possibility that the structure or subject matter of the legislation is of sufficient complexity to require that this court defer to agency legal interpretations."). We are hard-pressed to find an issue more within the Department's expertise than application of "material participation" as defined in Internal Revenue Code § 469(h) to the distinct context of the Iowa capital-gain deduction. We will therefore uphold the Department's interpretation of what is meant by "material participation" as used in section 422.7(21) unless it is "an irrational, illogical, or wholly unjustifiable interpretation" of the statute. Iowa Code § 17A.19(10)(*l*).

Even considering the deference given "to the agency's interpretation, the meaning of a statute is always a matter of law for us to determine." *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Review*, 723 N.W.2d 167, 173 (Iowa 2006).

Factual determinations—including application of the law to specific factual situations—have been clearly vested in the director. *Lowe's Home Ctrs., LLC v. Iowa Dep't of Revenue*, 921 N.W.2d 38, 45–46 (Iowa 2018). We therefore consider whether the director's application of law to the facts of this case was irrational, illogical, or wholly unjustifiable. *See id.* at 46 ("Because factual determinations are by law clearly vested in the agency, it follows that application of the law to the facts is likewise vested by a provision of law in the discretion of the agency." (quoting *Iowa Ag Constr. Co.*, 723 N.W.2d at 174)); *see also* Iowa Code § 17A.19(10)(*m*); *Nance*, 908 N.W.2d at 267.

The Christensens carry the burden of demonstrating the invalidity of the agency's action. *See* Iowa Code § 17A.19(8)(*a*).

### III. Validity of Iowa Administrative Code Rule 701—40.38.

We turn now to the issue underlying this appeal. The Christensens claim the capital gain Lila received from the sale of farmland she inherited from her father is excluded from income tax under Iowa Code section 422.7(21)(*a*). As discussed, section 422.7(21)(*a*) excludes from income

> [n]et capital gain from the sale of real property used in a business, in which the taxpayer materially participated for ten years, as defined in section 469(h) of the Internal Revenue Code, and which has been held for a minimum of ten years . . . .

Iowa Code § 422.7(21)(*a*)(1). The director did not dispute that Lila held the property for ten years. Instead, she rejected the capital-gain deduction only because the farmland was not used in a business in which the Christensens[6] "materially participated" as that phrase is further explained in the Department rules.

We begin our analysis by noting that "[t]ax exemption statutes are construed strictly, with all doubts resolved in favor of taxation." *Sherwin-Williams Co.*, 789 N.W.2d at 424 (alteration in original) (quoting *Dial Corp. v. Iowa Dep't of Revenue*, 634 N.W.2d 643, 646 (Iowa 2001)); *see also Lowe's Home Ctrs., LLC*, 921 N.W.2d at 46 (same, addressing exemption from Iowa sales tax). The Christensens, as the "taxpayer[s] seeking to come under a tax exemption statute[,] ha[ve] the burden of proving an entitlement to the exemption." *Lowe's Home Ctrs., LLC*, 921 N.W.2d at 46

---

[6]The Department does not dispute that although Lila, but not John, owned a half-interest in the farmland, the Christensens are allowed to consider both spouses' activities in determining whether they satisfy the "material participation" requirement. *See* I.R.C. § 469(h)(5).

(quoting *Ballstadt v. Iowa Dep't of Revenue*, 368 N.W.2d 147, 148 (Iowa 1985)); *see also Sherwin-Williams Co.*, 789 N.W.2d at 424 (same).

We may reverse the agency's interpretation only if it is "illogical, irrational, or wholly unjustifiable." Iowa Code § 17A.19(10)(*l*).

> A decision is "irrational" when it is "not governed by or according to reason." *Webster's Third New International Dictionary* 1195 [unabr. ed. 2002]. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, 846 N.W.2d 873, 878 (Iowa 2014) (quoting *Sherwin-Williams Co.*, 789 N.W.2d at 432).

Section 422.7(21)(*a*) excludes from an Iowa individual's taxable income the net capital gains earned from the sale of real property used in a business if the taxpayer both held the land and "materially participated" in the business in which the property was used for at least ten years. Iowa Code § 422.7(21)(*a*) (incorporating definition of "material participation" from I.R.C. § 469(h)).

The definition of "material participation" contained in § 469(h) is not complete without considering the context in which it is used. Section 469(h) expressly limits the definition of "material participation" to "purposes of this section." I.R.C. § 469(h) (2006). Thus, the remainder of § 469 must be considered to fully understand the context of the "material participation" definition provided in § 469(h). *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60, 125 S. Ct. 460, 467 (2004) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." (quoting *United Sav. Ass'n of Tex. v. Timbers*

*of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626, 630 (1988))).

Section 469 of the Internal Revenue Code limits the deductibility of losses and credits from passive activities for federal income tax purposes. It defines "passive activity" as any activity "which involves the conduct of any trade or business" and "in which the taxpayer *does not* materially participate." I.R.C. § 469(c)(1) (emphasis added). Thus, § 469(h) defines "material participation" as the antithesis of a passive activity for purposes of the loss limitation rules.

Section 469 expressly provides that with the exception of taxpayers in a real property business as defined in paragraph (c)(7), "the term 'passive activity' includes any rental activity." *Id.* § 469(c)(2). By definition then, a rental activity is one in which the taxpayer does not materially participate unless the taxpayer is in a real property business.

With this context, we turn to the rules implemented by the Department to provide guidance in determining when capital gains from the sale of real property used in a business are excluded from Iowa individual income tax. Rule 701—40.38 is titled "[c]apital gains deduction or exclusion for certain types of net capital gains" and includes significant detail within fourteen subrules. Iowa Admin. Code r. 701—40.38 (2006). Subrule 40.38(7) addresses capital gains from the sale of real property used in a business and defines "material participation" as "described in detail in subrule 40.38(1), paragraph '*c.*'" *Id.* r. 701—40.38(7).

Paragraph (*c*) in turn seeks to incorporate the terms of Internal Revenue Code § 469 as well as its detailed implementing regulations. The rule explains that "[g]enerally, an individual will be considered as materially participating in a tax year if the taxpayer satisfies or meets any of the following [seven enumerated] tests." *Id.* r. 701—40.38(1)(*c*)

(implementing rules from Federal Treasury Regulations § 1.469-5 and § 1.469-5T). Following that list of seven general tests, the rule provides a separate list of seven circumstances for "individuals in specific types of activities that may have unique problems or circumstances related to material participation in a business."[7]

Three of those seven specific types of activities relate to farming, providing a rule for cash farm leases, farm landlords involved in crop-share arrangements, and receipt of conservation reserve payments (CRP). As relevant to this case, the cash-farm-lease paragraph provides as follows:

> 4. Cash farm lease. A farmer who rents farmland on a cash basis will not generally be considered to be materially participating in the farming activity. The burden is on the landlord to show there was material participation in the cash-rent farm activity.

*Id.* Another of the seven specific types of activities addresses "rental activities or businesses."

> 7. Rental activities or businesses. For purposes of subrules 40.38(1) and 40.38(7), the general rule is that a taxpayer who actively participates in a rental activity or business which would be considered to have been material participation in another business or activity would be deemed to have had material participation in the rental activity unless covered by a specific exception in this subrule (for example, the exceptions for farm rental activities in numbered paragraphs "4," "5," and "6" immediately above). Rental activity or rental business is as the term is used in Section 469(c) of the Internal Revenue Code.

The Christensens argue they were not "farmers" to whom paragraph (4) applies but rather they actively participated "in a rental activity or

---

[7]The "general" tests and the "specific activities" each include enumerated lists under separate unnumbered paragraphs of rule 701—40.38(1)(*c*). Rule 701—40.38 has since been renumbered so that the "general" tests are identified as section 40.38(1)(*e*)(1)–(7) and the "special activities" tests, or "clarifications" as they are now called, are identified (with two additional paragraphs) as section 40.38(1)(*f*)(1)–(9). For sake of clarity, we refer to the distinct numbered lists used in the 2006 version of rule 701—40.38 as the "general test" paragraphs and the "specific activities" paragraphs.

business"—specifically a farm-rental business, fitting into paragraph (7). They also challenge the rule's treatment of income from farm lease activities different than other rental activities or businesses, arguing section 422.7(21) makes no such distinction.

As the ALJ recognized, the Iowa legislature's reference to Internal Revenue Code § 469(h) to define "material participation" leaves a gap when the term is applied to rental activities of any kind. The term "material participation" as defined in § 469(h) has no application to rental activities as a matter of law, except within the context of a real estate business as defined in § 469(c). Given that gap, the Department promulgated rules to address the "unique problem" of using this definition to determine whether the capital-gain deduction is allowed when the taxpayer leases the real property that generated the capital gain.

The specific-activities paragraphs related to farmland scenarios attempt to recognize when the landlord would be considered to have materially participated in the business in which the property was used. The different treatment of cash rent, crop-share, and CRP payments recognizes that the usual cash-rent farm lease would require little participation, let alone material participation. Nonetheless, the cash-rent farm lease rule is not a hard-and-fast rule but leaves room for a landlord receiving cash rent from the lease of farmland "to show there was material participation in the cash-rent farm activity." Iowa Admin. Code r. 701— 40.38(1)(*c*)(4).

The separate rule described in paragraph (7) applies to "[r]ental activity or rental business . . . as the term is used in Section 469(c) of the Internal Revenue Code" unless one of the other specific activities paragraphs applies, including the farming paragraphs. *Id.* r. 701—

40.38(1)(*c*)(7).[8]  Section 469(c) identifies a real property trade or business as "real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business."  I.R.C. § 469(c)(7)(C).  Special activities paragraph (7) essentially allows a taxpayer to use the general test paragraphs of rule 701—40.38(1)(*c*) to establish material participation in a rental activity related to a real property business, carving farming activities out of the real property business definition.

Given the gap in application of "material participation" as defined in Internal Revenue Code § 469(h) when applied to rental activities, we think the Department was well within its authority to develop the specific rules addressed to capital gains from the sale of real property involved in a rental business. We further accept the Department's explanation that the prevalence of farmland leases in Iowa and the differing types of related arrangements support the rules specific to farmland.

There is a difference in kind between leasing farmland and leasing commercial or residential real property.  *Cf.* 1 Marlin M. Volz, Jr., *Iowa Practice Series:*™ *Methods of Practice* § 15:1, at 480 (2019) (recognizing four general categories of leases, including leases of residential property, commercial property, farm property, and equipment leases of personal property); *id.* § 15:31, at 515 (addressing issues unique to leasing farmland and identifying differences from leases of residential property). The primary purpose of a farm lease is for use of the land, either to grow

---

[8]The Department directs us to the current version of rule 701—40.38 to support its distinction between farm leases and commercial or residential leases.  Rule 701—40.38 was amended in 2014 to add a list of "[e]xamples of qualifying involvement in operations of the property that are considered material participation activities if performed on a regular, continuous and substantial basis."  36 Iowa Admin. Bull. 1653, 1703–04 (Feb. 5, 2014).  This list was not part of the rule in effect in 2006, and we do not consider it.

crops, harvest timber, or raise livestock, and the lessee is generally responsible for caring for the land. To the extent there are structures on the land, they are often secondary to the primary purpose of the farm lease. On the other hand, the primary purpose of a commercial or residential lease is to utilize a building, either to live in under a residential lease or to house a business operation under a commercial lease. Here, the lessor rather than the lessee generally retains responsibility for maintaining the building. *See, e.g.,* 49 Am. Jur. 2d *Landlord and Tenant* § 414, at 437 (2018) ("By its very nature, a lease of farmland imposes affirmative duties on the tenant, compliance with which is termed good husbandry. This is unlike an ordinary lease which normally would require only that the tenant refrain from acts of affirmative waste."); Gary Goldman, *Uniform Commercial Landlord and Tenant Act—A Proposal to Reform "Law Out of Context,"* 19 T.M. Cooley L. Rev. 175, 181 (2002) (explaining the historical development of lease laws in the agricultural context created doctrines ill-suited for "urban" leases of residential and commercial buildings, in large part based on distinctions between farm leases "where the land was primary and any structure was incidental" and leases of residential and commercial buildings where "it is the structure that is primary and the land that is irrelevant").

A farm lease focuses on the land and generally places responsibility for the land on the lessee, whereas a commercial or residential lease focuses on the building and generally leaves primary responsibility for the building on the lessor. These basic differences underscore that different types and levels of participation would be expected by the respective landlord. They also support the Department's development of rules specific to farm leases in determining whether a landlord meets the

definition of "material participation" envisioned by Iowa Code section 422.7(21)(*a*).

The evidence presented in this case reveals the limited involvement of a typical cash-rent farm landlord. Rent payments were made only twice per year, as is typical in a cash-rent farm lease. The only thing changed on the standard farm lease form from year to year was the per-acre rate, requiring at most a two-hour renegotiation, and even that did not always change. The standard lease form placed on the tenant the obligations "to keep said premises free from brush and burrs, thistles, and all noxious weeds, and [to] mow and cut near the surface of all weeds." Given the focus of a farm lease on the land rather than any incidental buildings, those terms leave little else for a cash-rent farm landlord to do.

We also consider whether rule 701—40.38 furthers the purpose of the statute it is intended to interpret. *See Sherwin-Williams Co.*, 789 N.W.2d at 423. Section 422.7(21)(*a*) excludes only certain capital gains from taxable income, specifically those from the sale of real property used in a business in which the taxpayer "materially participated" for at least ten years. Iowa Code § 422.7(21)(*a*) It is relevant to our consideration of the purpose of the capital-gain deduction that the same subsection allows a deduction for capital gains earned on the sale of a business, narrowly defined in the statute to "mean[] the sale of all or substantially all of the tangible personal property or service of the business." *Id.* § 422.7(21)(*a*)(1). In *Ranniger*, we affirmed denial of the capital-gain deduction to an accountant because selling his fifty percent interest in an accounting partnership did not satisfy the statute's limited application to capital gains earned from the "sale of a business." *See Ranniger*, 746 N.W.2d at 269. We rejected the accountant's argument that his fifty percent interest was itself "a business." *Id.* The department's determination—that the

accounting partnership, not the accountant's ownership interest in it, was the relevant business to which the deduction could apply—was not irrational, illogical, or wholly unjustifiable. *See id.* ("The department's more narrow view of the statute is consistent with [our strict construction against exemptions]; the taxpayers' expansive view is not."). While the purpose of the capital-gain deduction is not stated by the legislature, the lengthy ten-year holding period, the narrow definition of "sale of a business" in the same subsection, and the material-participation requirement indicate the legislature intended the deduction to apply narrowly. *See Lowe's Home Ctrs., LLC*, 921 N.W.2d at 46 (noting we construe exemptions strictly in favor of taxation).

We reject the Christensens' argument that the rule is invalid because it makes distinctions not made in the statute. Although section 422.7(21) does not distinguish between farm-rental activities and other types of rental activities, neither does it preclude the distinction. Where rule 701—40.38 is not inconsistent with the statutory language, and it addresses a specific gap resulting from incorporation of a definition from the Internal Revenue Code into a different application under the Iowa Code, we cannot say the rule is irrational, illogical, or wholly unjustifiable. *Cf. Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 591–92 (Iowa 2004) (holding rule was irrational or illogical where, "[i]n essence, the ABD ignored the phrase 'indirectly be interested in ownership' as used by the legislature in section 123.45" when it promulgated a rule allowing a remote or *de minimis* ownership interest (quoting Iowa Code § 123.45 (2001))). The longevity of the rule, unchallenged by the legislature for over a decade at the time the Christensens claimed the deduction in 2006, also supports our conclusion that the rule's treatment of farm leases is not irrational, illogical, or wholly unjustifiable. *See Serv. Emps. Int'l Union, Local 199 v.*

*Iowa Bd. of Regents*, 928 N.W.2d 69, 78 (Iowa 2019) ("The rule has withstood the test of time. The legislature in the subsequent four decades has taken no action to invalidate this rule."); *Lowe's Home Ctrs., LLC*, 921 N.W.2d at 48 ("The legislature has not amended section 423.3(37) in response to this administrative rule [promulgated in 2005]. 'We consider the legislature's inaction as a tacit approval of the [agency's] action.'" (second alteration in original) (quoting *City of Sioux City v. Iowa Dep't of Revenue & Fin.*, 666 N.W.2d 587, 592 (Iowa 2003) (noting the eleven-year history of an administrative rule weighed against finding it invalid))).

The Department acted within its discretion when it promulgated distinct rules for farm leases and other types of real property leases in rule 701—40.38(1)(*c*).

**IV. Application of Rule 701—40.38 to this Case.**

Having determined the rule's distinction between leases of farmland and other types of real property is valid, we reject the Christensens' attempt to avoid the farm-specific rules. As discussed above, there was a logical reason to treat leases of farmland differently based on the minimal activities generally involved with such leases. The rules use "farmer" and "farm landlord" interchangeably. There is no doubt that the Christensens entered into "cash farm leases," and their attempt to recharacterize their "business" as a rental business does not take it out of the specific rule adopted for cash farm leases.

While a cash-rent farm landlord "will not generally be considered to be materially participating in the farming activity," the taxpayer is nonetheless entitled to the deduction if he or she can "show there was material participation in the cash-rent farm activity." Iowa Admin. Code r. 701—40.38(1)(*c*)(4). Even considering the nonfarm standards for material participation, we conclude the Department's rejection of the

capital-gain deduction in this case was well justified by the facts as presented to the Department.

Under the general test paragraphs of rule 701—40.38(1)(*c*) "an individual will be considered as materially participating in a tax year if: . . . [t]he individual participates in the business for more than 100 hours in the tax year and no other individual spends more time in the business activity than the taxpayer." Iowa Admin. Code r. 701—40.38(1)(*c*)(3). Another general test paragraph provides that

> [a]n individual who participates in the business activity for more than 100 hours may be treated as materially participating in the activity if, based on all the facts and circumstances, the individual participates on a regular, continuous, and substantial basis.

*See id.* r. 701—40.38(1)(*c*)(7).

Although the Christensens alleged they met these tests, the director properly determined their bare allegations, without any real quantification of the work they completed, were insufficient to satisfy any of the rule 701—40.38 material-participation tests. Their limited activities of collecting rent twice a year and renegotiating the leases, a two-hour endeavor, were not "regular, continuous, and substantial." The director rejected John's testimony about work activities as vague and contradicted by other, more direct evidence.

> It is the agency's duty "as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." "We are bound by the agency's findings so long as they are supported by substantial evidence."

*Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 192 (Iowa 2013) (first quoting *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007); and then quoting *Am. Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 835 (Iowa 2009)). The director's findings were bolstered by

the lack of any attempt by the Christensens to quantify the time spent performing any of the claimed tasks. The director's findings were supported by substantial evidence, and she was well within her discretion to deny the capital-gain deduction based on the record presented.

**V. Disposition.**

The director's assessment of additional taxes and related penalties and interest was not irrational, illogical, or wholly unjustifiable. Therefore, we affirm the judgment of the district court.

**AFFIRMED.**